Johnson, Ch.
The late Samuel Tompkins, by his last •will, devised and bequeathed to his wife, Elizabeth, the plantation on which he lived, and ten negroes, by name, his household furniture, and a portion of his live stock, for and during the term of her natural life, and at her death to return to and become a part of his estate. And, after giving some specific legacies, he bequeathed two-thirds of the residue to an illegitimate son, and the remaining third to his executors; of whom the defendant, James Tompkins, was one, and is now the only survivor. The property devised to the wife, consisting oí the land, negroes, furniture and live stock, was delivered to her not long after his death. Legal proceedings were instituted to test the validity of the legacy to the illegitimate son, and it was adjudged to be void, as a violation of the Act of the Legislature, and as to that, he died intestate, and upon the distribution of that portion of the estate the widow acquired six other negroes, and some other property of less value.
In 1827, the widow intermarried with the complainant, but before the marriage was solemnized, they entered into a contract by which all the property acquired by the means above stated, was secured to her special use, with power to dispose of it by deed or will, and in default thereof, then to her right heirs. She died in 1842, intestate, and without having disposed of her property by deed, and without leaving issue. Administration of her estate was granted to the defendant, *115 Thomas Ferguson, and the bill prays an account and distribution of the property devised by Samuel Tompkins to his wife for life, and also of the property which was distributed to her on the partition of that portion of his estate of which he died intestate. Mrs. Rochell left, at the time of her death, numerous collateral relatives, who, with her husband, the complainant, are entitled to distributive shares of her estate, and most or all of them are parties defendants, as also all the next of kin to her deceased husband, Samuel Tompkins,
The complainant s Sates in his bill, that immediately after his intermarriage with his late wife, he took upon himself the management and control of her property, and continued to do so down to the time of her death, acting in all respects as her agent, and by judicious management increased and improved it. But that in discharging his duty, he necessarily incurred debts to the amount of $2000 or $2500 which remain unpaid, and now exist, in part, in the form of promissory notes, given by him and herself jointly, some in notes given by the complainant himself, and the remainder in book accounts, and having no property of his own at the time, he insists that these debts ought to be paid out of her estate, as they were contracted solely for its benefit.
The defendants, James Tompkins and Thomas Ferguson, alone have answered, and they deny the right of complainant, upon the grounds that will hereafter be stated, to any share of the estate of his wife, as well that which she took for life under the testator’s will, as that which she acquired in the distribution of that portion devised to the illegitimate son. They deny also, that the debts stated in the bill as incurred on account of the estate, are chargeable on it — they state that the- complainant and his late wife have used or disposed of most of the furniture and live stock, bequeathed by the testator to his wife, and insist that he is accountable therefor.
The testator provides that, on the death of his wife, the property devised and bequeathed to her, should revert to his estate, but makes no further disposition of it. It is then a case of intestacy, as to the reverion, and the defendants insist, 1st, that the wife having died before the reversion could occur, the estate is distributable amongst the testator’s next of kin, to the exclusion of the wife’s relations. The only argument relied on in support of this position, was that the wife’s right in the reversion was incompatible with the, previous life estate; but their incompatibility is not perceived. On the death of the testator, the right to the reversion vested instantly somewhere, and in whom but in those entitled to *116 distribution? — amongst whom the wife was most prominent. There were no children, and the Act of 1791 gives her one-half, and the remaining ha}f to his brothers and sisters, the children of a deceased brother or sister representing the parents.
But by the terms of the marriage settlement, the whole of the estate which Mrs. Rochell derived from her deceased husband, is limited over to her right heirs, in the event of her not disposing of it by deed or will. She made no deed or will, and the defendants insist, secondly, that the complainant is not entitled to take as one of the heirs of the wife. In England, the word has a technical and well defined meaning, and is used to designate the person or individual on whom the descent is cast on the death of the ancestor. The right of primogeniture is abolished by an Act of the Legislature, and the estate of the intestate is directed to be distributed amongst a class of persons to whom the term heirs is not strictly applicable; but for want of a more appropriate term, and to avoid the circumlocution necessary to express the idea, it is almost universally used here to designate a class. Mrs. Rochell left no issue, and her estate is, under the Act, distributable in the proportion of one-half to the husband, the complainant, and the remaining one-half to certain of her collateral relations. He is not the Iiceres natus, but the hceres f actus of the law. Seabrook v. Seabrook, 1 McMul. Eq. Rep. 301.
The third question raised by the pleadings, is whether the separate estate of Mrs. Rochell is liable for debts contracted by her, or under her authority. She could not, of course, create an}r charge upon the property devised and bequeathed to her for life, except to the extent of her interest in that portion which reverted to her, and the property she took in the undivided portion of the testator’s. She had a vested and absolute interest reserved to her separate use, and subject to her distribution under the marriage contract. In the case of Jane Reed, by her next friend, v. Peter Lamar et al. heard by me at the last June session of the Court at Abbeville, I had occasion to consider this question, under circumstances precisely analagous to these, and came to the conclusion that a married woman, having a separate estate, was capable of contracting debts, and her separate property was chargeable with them in the same manner as if she was sole. That case, it is understood, will go to the Court of Appeals, and I need not, therefore, repeat the argument on which the decree in that case is based, but shall decide in conformity with that judgment.
*117 The next and only remaining question is, whether the complainant’s, or more strictly his wife’s estate, is liable for property bequeathed to her for life, which has been disposed of by either, or worn out or consumed in their use.
There can be no doubt about their several liability for the property disposed of by either of them respectively, and of their joint and several liability for that disposed of by them jointly. The only property to which this question is applicable, is the household furniture and a portion of the live stock specially bequeathed. And in Robertson v. Collier, 1st. Hal. Ch. Rep. 373, the general rule laid down is, that if chattels, strictly consumable in their use, such as provisions, &c. be given specially to one for life, remainder over, the remainder over is void, as being inconsistent with the only use the tenant for life could make of them. If a similar bequest of things, wearing out in the use, such as farming utensils, &c. the remainderman must take them as they exist at the termination of the life estate. A different rule prevails, it seems, in relation to live stock, and in Henry v. Glover, 2 Hill, 521, it is said that the tenant for life is bound to keep up the original stock of such as are capable of increase. The household furniture falls under the second rule. Those entitled in remainder, must take it as it existed at the death of Mrs. Rochell. The live stock falls under the last rule, which I think ought to be applied with some qualifications. Some live stock, mules for example, are incapable of reproduction, and fall within the qualification expressed. So of males of the horse kind necessarily, and I think it ought, under the present usage of the country, to be applied to that species of animal generally. Planters do not generally breed their horses or mules. They depend, for the most part, on the animals supplied from the west, and whether wisely or not is irrelevant to the question. My own opinion is that they would profit by lessening the production of marketable produce to rear all their live stock; but the fashion is otherwise, and I have not been able myself to counteract it, even in my own concerns, and I know but few others who plant cotton or rice for market, who are exceptions to the general usage. And when a testator, understanding this usage perfectly, gives a life estate in horses to one, with remainder to another, it cannot be supposed that he intended that the tenant for life should depart from the usage in the management of it. He speaks in reference to the general usage of the country, and must be understood in reference to it. If departing from the general usage, there be an actual reproduction, the remainderman will be entitled to it. The usage *118 is otherwise in regard to cattle, hogs and sheep. These are usually reproduced on the plantations, and although not in .number, particularly of hogs, equal to the demand, yet there is always an effort to supply a portion by this means; and on the principle of this rule, the tenant for life must be bound to keep up the stock to the same extent.
The defendant, James Tompkins, submits in his answer, that if Mrs. Rochell was entitled to any share of the reverted estates, his co-defendant, Ferguson, her administrator, and not the complainant, is entitled to an account of the personalty. That, in strictness, is correct, and the joinder of matters concerning the estates of Samuel Tompkins and Mrs. Rochell, which have no necessary connection with each other, was very irregular, and has tended very much to confuse the case, but as no objection has been made to it, and as the accounting parties are before the court, the rule may be remedied by a mutual accounting, which I propose to order.
■ It is therefore adjudged and decreed, that the complainant .is entitled to the one-fourth part of the estates, real and personal, devised and bequeathed by Samuel Tompkins to his wife, the late Mrs. Rochell, and which, upon her death, reverted to his estate. Her brothers and sisters, the child or children of a deceased brother or sister representing the deceased parent, and taking the share the parent would have taken, if living, are entitled to one other fourth part; and the brothers and sisters of the testator, the child or children of a deceased brother or sister representing the parent in like manner, are entitled to the remaining one-half. That the ..complainant is entitled to one-half of all the other estates, to which Mrs. Rochell was entitled, and her brothers and .sisters in like manner representing the parent, to the remaining one-half thereof.
And it is ordered and decreed, that the defendant, James ’Tompkins, do account with his co-defendant, Thomas Furgu;son, for the interest of Mrs. Rochell in the reverted personal .estate of his testator, and with the other distributees, on the principles of this decree; and that the said Thomas Furguson do account with his said co-defendant, James Tompkins, for any waste she ma3r have committed, having reference to the principles before laid down, in the personal estate bequeathed to her for life. That he do also account with the complainant and other distributees of his intestate’s estate for the whole of her personal estate: and it is also ordered and decreed, that the complainant do account with the defendant, James Tompkins, for the personal estate bequeathed to his wife, and for which he may be liable on the principles of this decree, and *119 for any rents he may have derived from the real estate, since the death of his wife.
It is also ordered and decreed, that a writ of partition do issue, to divide the tract of land described in the pleadings, amongst the parties, in the proportions hereinbefore indicated.
I observe it is stated in the answer of James Tompkins, that the children of Francis Tompkins, a deceased brother of the testator, are not made parties to the bill. That I suppose has been supplied. If not, it ought to be done forthwith. In other respects, I have heard no objection as to parties, and I suppose their names and the relation in which they stand to the testator and the intestate are strictly stated in the bill, and the writ of partition must follow it in describing the premises. In stating the accounts between these parties, as hereinbefore ordered, the Commissioner will take into consideration any other matters involved in the pleadings, which are necessary to a final adjustment of the accounts, and report any special matter that he may judge necessary to attain that object.
The debts of Mrs. Rochell, if she left any unpaid, must be provided for out of her separate estate, and that is prayed for in the bill. The complainant will not be himself entitled to the money, but he is entitled to be indemnified against any for which he is also liable. Her administrator is also interested in providing for their payment before the funds are distributed.
It is, therefore, further ordered, that the Commissioner do call in the creditors, to prove their demands, determining her liability by the rule hereinbefore laid down on that subject.